UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY FANIA,
ON BEHALF OF HIMSELF
AND OTHERS SIMILARLY SITUATED

     Plaintiff,

                         Case No. 2:22-12354
                         HON. GERSHWIN A. DRAIN

vs.


KIN INSURANCE, INC.,

     Defendant.

_____/

## OPINION AND ORDER: (1) TAKING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS OR, ALTERNATIVELY, TO STAY CASE PENDING ARBITRATION UNDER ADVISEMENT [ECF No. 5]; AND (2) SETTING DATES.

### I. Introduction

Plaintiff Anthony Fania filed this lawsuit in October 2022 on behalf of himself and others similarly situated. [ECF No. 1]. The class action complaint accuses Defendant KIN insurance of violating the Telephone Consumer Protection Act, 47 U.S.C § 227 (Count I). [ECF No. 1, PageID.9].  Before the Court is Defendant KIN Insurance's ("KIN") Motion to Compel Arbitration and to Dismiss Or, Alternatively, to Stay Case Pending Arbitration. It was filed on October 28, 2022. Fania responded on December 9, 2022. And KIN replied on December 16,

2022. The motion is fully briefed. For the reasons stated below, KIN's motion is **TAKEN UNDER ADVISEMENT**.

On November 9, 2022, Fania also filed a Motion for Extension of Time to File Response ("extension motion"). [ECF No. 7]. KIN responded on November 10, 2022. Fania replied on November 11, 2022. The motion is fully briefed. For the reasons stated below, Fania's extension motion is **GRANTED**.

## II. Factual Background

Kin sells insurance products in multiple states and consumers may request an insurance quote from Kin through various websites. Kin alleges that, on August 29, 2022, Fania visited www.dailyinsurancedeals.com (the "subject website"), to request an insurance quote. On the subject website, an individual with Fania's name, address, and phone number consented to receive "pre-recorded" calls or text messages from "Marketing Partners," which included Kin. Allegedly, Fania also consented to the subject website's broad arbitration provision and class action waiver; it stated that the consumer must arbitrate "any and all claims that may arise" under the terms and conditions or "site offerings." [ECF No. 5, PageID.28].

Fania allegedly received a pre-recorded telemarketing call from the Defendant on August 29, 2022. The recorded message asked if the call recipient was looking for home insurance. Fania's complaint alleges that he did not seek out

or solicit information regarding the mortgage services promoted by Kin. [ECF No. 1, PageID.6]. He says his telephone number, 973-XXX-1248, has been on the National Do Not Call Registry since 2004. Fania says he recognized he was speaking to a robot, so he interrupted the recorded message asked the robot a question. There allegedly was no response from the robot because the call was prerecorded. The Plaintiff was then told by a live agent that they were calling from KIN Insurance. The Plaintiff then allegedly received another call from Tamely Jobs, who was following up on the pre-recorded call that the Plaintiff received and continued to promote the Defendant's services. [ECF No. 1, PageID.5-6].

## III.   Analysis

### A. Extension Motion

KIN asserts that Fania's motion should be denied or stricken because: (1) Fania made no reasonable effort to meet and confer before the extension motion was filed and (2) Fania lacks good cause to extend the deadline. [ECF No. 8, PageID.90].  Fed. R. Civ. P. 12(f) provides that, on a motion of a party, the court may "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A court has liberal discretion to strike such filings as it deems appropriate, or to let the filings stand. *Van Loo v. Cajun Operating Co.,* 64 F.Supp.3d 1007, 1012 (E.D. Mich. 2014) (internal

citation omitted). However, the Sixth Circuit has held that such motions are a "drastic remedy" that are to be used sparingly and are only to be granted when the pleadings to be stricken have no possible relation to the controversy. *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir.1953).

With respect to motion practice, Local Rule 7.1 (a) requires the movant to confer with the other parties and other persons entitled to be heard on the motion in good faith and in a manner that reasonably explains the basis for the motion and allows for an interactive process aimed at reaching agreement on the matter or those aspects of the matter that can be resolved without court intervention, given the nature of the contemplated motion. The conference must be held in advance of filing the motion to allow a good faith interactive exchange aimed at resolving the matter. *Id*. If concurrence is not obtained, the motion or request must state: there was a conference between attorneys and other persons entitled to be heard on the motion in which the movant explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought; or, despite reasonable and timely efforts specified in the motion or request, the movant was unable to conduct a conference. Fania's extension motion provides a statement of concurrence, it says, "Counsel for the Plaintiff advised counsel for the Defendant on November 8, 2022 of their intent to seek a 30-day extension to respond to the pending motion. Counsel for the Defendant did not provide a

position before this motion was filed and with the current deadline of November 11, 2022 [for Fania's response to the motion to compel arbitration], the Plaintiff needed to file this motion." [ECF No. 7]. The Court is satisfied that Fania engaged in a good faith and reasonable effort to seek concurrence before filing his extension motion, therefore the Court will not strike Fania's motion on this basis.

Fed. R. Civ. P. 6(b)(1)(A) permits a court to enlarge the time to respond to a motion with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or on motion made after the time has expired if the party failed to act because of excusable neglect. There is no dispute that Fania filed the extension motion before the day on which his response to KIN's motion to compel arbitration was due, thus, the Court may extend the response deadline without a showing of excusable neglect. Fania requested an extension because KIN submitted additional "evidentiary material [attached to its motion to compel arbitration] that require[s] [Fania's] review and further investigation." [ECF No. 7, PageID.82]. An extension under these circumstances would not cause undue delay or prejudice. On the other hand, without the extension, Fania is put in a position of having his response to a dispositive motion stricken, thereby making it impossible for the Court to make a decision on the merits.

The Court finds that Fania explanation for the delay is reasonable, thus, for good cause shown, the extension motion is **GRANTED**. Next, the Court will discuss whether Kin's motion to compel arbitration must be granted.

### B. Motion to Compel Arbitration

Under the Federal Arbitration Act, parties cannot be forced into an arbitral forum unless they actually agreed to arbitrate, and courts must confirm that they did so before shipping the dispute to arbitration. 9 U.S.C.A. § 4; *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 843 (6th Cir. 2021). § 4 states that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under" a written arbitration agreement may "petition" a district court for an "order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

In *Boykin*, the Sixth Circuit made it known that such a request to compel arbitration under § 4 must be treated as a motion, it laid out procedures for resolving such a request. The section allows the court to consider only narrow issues: those "relating to the making and performance of the agreement to arbitrate." *Boykin*, 3 F.4th at 837 (citing *Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)).  If, after hearing from the parties, the court is "satisfied that the making of the agreement" (or its breach) "is not in issue," the court "shall

make an order" compelling arbitration. 9 U.S.C. § 4. If instead the court finds that the "making of the arbitration agreement" (or its breach) is "in issue," the court "shall proceed summarily to the trial" on the disputed question. *Id*. This text directs courts to act "summarily": they should resolve arbitration-related issues "as quickly and easily as possible." *Boykin*, 3 F.4th at 837 (citing *Moses H. Cone v. Mercury Const. Corp.*, 460 U.S. 1, 22 (1983).

"Rule 56's summary judgment standards govern whether a court should hold a trial under § 4 when a party alleges that no contract exists." *Boykin*, 3 F.4th at 839 (collecting cases and stating: "this analogy to summary judgment provides the right way to assess a motion to compel arbitration under § 4. The question whether the party opposing arbitration has put the making of the arbitration contract 'in issue' looks a lot like the question whether a party has raised a 'genuine issue as to any material fact.'" Courts have recognized that a party who adequately puts the formation of an arbitration contract in issue may request discovery on that contract-formation question. *Boykin,* 3 F.4th at 841 (citing *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 511 (7th Cir. 2003) and Fed. R. Civ. P. 56(d)).

Fania argues that he has adequately put the formation of the arbitration agreement in issue. Kin disputes this assertion, averring that Fania is "trying to manufacture a genuine factual dispute where none exists." [ECF No. 13, PageID.138]. Kin cites *Anderson v. Crothall Healthcare Inc.*, 2022 WL 3719834,

at *4–5 (E.D. Mich. Aug. 29, 2022) for the proposition that "[c]ourts have rejected a party's own assertion, without evidentiary support, as sufficient to create a genuine issue of material fact [on a motion to compel arbitration] when the evidence shows otherwise"). [ECF No. 13, PageID.138].    *Anderson* is distinguishable, there, the arbitration agreement was electronically signed using defendant's on-boarding system that required plaintiff to create a profile using her name, email address, and unique password of her choosing. *Id*. Plaintiff also used this unique password to receive, review, authenticate, and affirm documents related to her employment. *Id*. Plaintiff testified that she did not know about the arbitration agreement, but the record indicated, and she did not dispute, that she received a confirmation email listing all the documents she signed during the onboarding process, including the arbitration agreement. *Id*.

In contrast to *Anderson*, Kin puts forth no undisputed facts showing that Fania signed the agreement and no evidence showing that Fania received the home insurance quote that he allegedly requested when he allegedly signed the arbitration agreement. However, it does rely on an affidavit signed by Brain Progrund, Vice President of Operations for Kin, from August 2020 to January 2022. [ECF No. 5-1, PageID.51]. He stated that an individual submitted a request for insurance quote and signed the arbitration agreement: (1) using a device with a Florida-based IP address (where Plaintiff allegedly resides), (2) providing the name

"Tony Fania" (which is Plaintiff's name), (3) indicating they resided in Largo, Florida (where Plaintiff allegedly resides or owns residential property), (4) giving the Zip Code for Largo, Florida (33371), and (5) providing the Plaintiff's alleged phone number. [Id at PageID.53].

While Kin is correct in its assertion that some circumstantial evidence supports its contention that it was Fania who signed the agreement, some circumstantial evidence also supports Fania's denials, unlike *Anderson*. Fania submitted an affidavit, which has a material impact on the arbitrability issue. His affidavit states that he:

> flatly and unequivocally den[ies] ever visiting dailyinsurancedeals.com in or around August 2022. I have never requested a quote through dailyinsurancedeals.com, input my personal information on the website, or agreed to the website's terms, including any arbitration terms or agreements to allow insurance companies to contact me by phone or otherwise.
>
> I had no reason to search for home insurance policies on dailyinsurancedeals.com because I do not live in a traditional home, I live in a mobile home. I insure the home under a fire-only policy and have no need for traditional home insurance. As a result, I do not need, do not want, and did not ask for either dailyinsurancedeals.com or Kin Insurance to contact me about home insurance or insurance quotes using any means. I verified this fact after reviewing my internet activity history on the internet browser I use to search the web, which tracks my activity history and searches on the browser.

Consider *Camara v. Mastro's Restaurants LLC* in support of the point that Fania's affidavit raises a genuine issue of material fact. There, Mastro's Steakhouse

required its employees to sign arbitration agreements. See *Camara v. Mastro's Restaurants LLC*, 952 F.3d 372, 373 (DC Cir. 2020). A manager instead testified that "virtually every" employee must sign the agreement, and a human-resources director stated that Camara's personnel records showed that he had done so. *Id*. at 374. However, Camara testified that he had not seen or signed the agreement and was not aware of any arbitration policy. *Id*. The court found that this conflicting evidence necessitated a trial under § 4. *Id*. at 374–75.

Relying on *Camara*, *in Boykin*, the Sixth Circuit held that statements similar to the ones Fania made in his affidavit created a factual dispute over whether Boykin authorized the arbitration contract or learned of Family Dollar's arbitration police in other ways. *Boykin*, 3 F.4th at 840. Subject to the penalties for perjury, Boykin "flatly denied" accepting an arbitration contract: "I unequivocally did not consent to, sign, acknowledge or authorize any type of arbitration agreement with [Family Dollar] on or after July 15, 2013, or at any time." *Id*. He also flatly denied receiving information about arbitration: "I was not informed by [Family Dollar] that I was required to enter into an arbitration agreement as a condition of my employment." *Id*.

Similarly, Fania made an "unequivocal denial" that takes the form of admissible "evidence," which can create a genuine dispute of fact. *Boykin*, 3 F.4th at 840 (citation omitted). Courts must review factual conflicts "in the light most

favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation omitted). So a party might be able to obtain a trial under § 4 with a sworn denial that the party never signed an arbitration agreement or received arbitration materials. See *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161–62 (3d Cir. 2009). That is exactly what happened here, and while Kin says that Fania's affidavit is "self-serving" it does not show that Fania's affidavit is "blatantly and demonstrably false" such that it is a sham or cannot be relied on to create a genuine issue of material fact. See *Boykin*, 3 F.4th at 842; *France v. Lucas*, 836 F.3d 612, 622–24 (6th Cir. 2016).

Fania sufficiently puts "in issue" the formation of the agreement and its alleged signing by him. As required by § 4, the Court will "proceed summarily to the trial" on the disputed question. The parties may not address merits issues before the court resolves these formation questions and Kin's motion to compel. *Boykin*, 3 F.4th at 844. In the meantime, the court will take Kin's motion to compel arbitration under advisement. Given Fania's need for discovery the Court will not proceed immediately to trial. Anthony Paronich, Plaintiff's Counsel, submitted an affidavit. It states that "Plaintiff does not have access to the documents defendant relies on and defendant has not produced all documents it relies on." [ECF No. 11, PageID.123]. It also explains in relevant part:

Plaintiff would target his discovery at the contract formation issue, seeking information related to how the records defendant relies on were made, who made them, whether they qualify as "business records," and how they establish that an individual named "Tony Fania" visited dailyinsurancedeals.com, if at all. Specifically, plaintiff requests the right to serve interrogatories, document requests, and take depositions under Rule 30(b)(6) of defendant and dailyinsurancedeals.com's corporate representatives. . . Whether defendant took steps to verify information related to plaintiff or "Tony Fania" that it received from third-parties, including dailyinsurancedeals.com, and what those steps were . . .[1]

Because summary judgment can be supported or defeated by citing a developed record, courts must give the parties adequate time for discovery. *Boykin*, 3 F.4th at 842 (citing *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764 (3d Cir. 2013)). But any discovery must comport with § 4, which "calls for a summary trial—not death by discovery." *Boykin*, 3 F.4th at 842 (citing *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014)).

## IV.    Conclusion

For the reasons stated above, the Court orders the following:

1.  Fania's extension motion is **GRANTED**.

2.  Kin's Motion to Compel Arbitration is **TAKEN UNDER ADVISEMENT.**

---

[1] Amongst other things, Fania also seeks: all documents in Kin's possession related to plaintiff or "Tony Fania"; all documents showing plaintiff or "Tony Fania" agreed to its website terms, if any such documents exist; all documents showing how it transmits information to Kin; and all documents showing how it sent information related to plaintiff or "Tony Fania," if at all. [ECF No. 11, PageID.125].

Because the Court is not permitted to consider the merits until it has decided the contract formation issue, the Court will not rule on Kin's motion to dismiss at this juncture.

It is further ordered that:

1. The Court will allow discovery for the limited purpose of addressing the contract formation issue. Discovery will remain open until **August 22, 2023**.

2. The parties must submit **trial briefs 10 days after discovery closes; the deadline is September 1, 2023**.

3. Those trial briefs must address pertinent questions that must be decided before a summary trial can occur:

   a. what is the burden of proof on the contract formation issue and which party must carry it;

   b. any evidentiary issues related to contract formation.

4. The parties must submit witness lists by **June 28, 2023**.

5. Motions in limine and the Joint Final Pretrial Order are both due on **August 22, 2023**. Responses to the motions in limine are due on **August 29, 2023**. Any reply briefs must be filed by **August 31, 2023**.

6. The Final Pretrial Conference is scheduled for **September 12, 2023, at 2:00 pm**.

7. A bench trial on the contract formation issue will begin on **September 19, 2023 at 9:00 am**.

**IT IS ORDERED**

Dated:  May 22, 2023                    /s/Gershwin A. Drain
                                        GERSHWIN A. DRAIN
                                        United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 22, 2023, by electronic and/or ordinary mail.
                        /s/ Teresa McGovern
                        Deputy Clerk